# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESTER PETTAWAY, | |
| Plaintiff, | |
| v. | No.10 C 7839<br>Judge James B. Zagel |
| INTERNATIONAL PAPER, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lester Pettaway, pro se, filed this action against his former employer, International Paper, alleging "Unlawful Acts to FMLA Law." Plaintiff alleges that his employment was terminated when he availed himself of his rights under the Family Medical Leave Act ("FMLA"). Defendant now moves for summary judgment. For the reasons that follow, that motion is granted.

## BACKGROUND

On December 9, 2010, Plaintiff filed his initial one-page Complaint in this Court against International Paper. After a series of amended Complaints, I determined that Plaintiff's Second Amended Complaint, filed on August 2, 2011, would be the operative Complaint in this matter. Plaintiff's Second Amended Complaint states in its entirety:

> The allegations of Plaintiff's Second Amended Complaint are as follows:
>
> The plaintiff Lester Pettaway complaining of the defendant herein and, pursuant to 29 U.S.C. §2615(a)(1) & (2); U.S.C.§2612 (a)(1)(d).
>
> Lester alleging that his termination violated the FMLA because it was an adverse action taken on the basis of having availed himself of protected leave.

1

Everything International paper did violated my federal rights pursuant to all of the exhibits.

Because of the willfulness and malicious actions I am asking the court to grant me 40 million dollars in Punitive Damages. Pursuant to Family Medical Leave act (FMLA) U.S.C.§2601, et seq.

International Paper is a producer of paper, packaging and forest products. Defendant operates a facility known as the Des Plaines Container plant located in Des Plaines, Illinois. Plaintiff was a union employee at the Des Plaines facility where he worked as a Clamp Truck Driver at all times relevant to this matter.

Plaintiff and the other hourly employees at the facility are represented by the United Steel Workers, Local 7-0647 and operate under a collective bargaining agreement with the Defendant. In addition, the employees are subject to a published Plant Attendance Policy, which went into effect July 1, 2009. The Plant Attendance Policy reads in pertinent part:

> All absences must be reported prior to the employee's shift start to the designated call in number. Absences in excess of three (3) days must be reported to management during working hours 8:00 a.m. to 4:00 p.m. Leaving a message on the answering machine will not be sufficient…

Failure to comply with these call-in procedures results in an "Unreported Absence." The Plant Attendance Policy specifically addresses Unreported Absences, stating in pertinent part: "THREE CONSECUTIVE DAYS of unreported absence, the employee will be presumed to have quit and will be removed from the payroll."

In compliance with the Policy, Plaintiff called the attendance line on November 2, 2009 to report he would not be in to work. On November 3, 2009, Plaintiff again called the attendance line indicating that he was not sure when he would return to work. In a subsequent call to the attendance line on November 3, 2009, Plaintiff also indicated that he was scheduled for a

doctor's appointment and would be out until November 9, 2009. However, allegedly because of the duplicate calls on the same day, a communication error apparently occurred, and Defendant was not initially informed that Plaintiff anticipated being off work until November 9, 2009.

Plaintiff was absent on November 4, 5 and 6, 2009 without calling the attendance line. Additionally, although the Plant Attendance Policy required Plaintiff to call in and speak with a member of management beginning on November 5, 2009, his fourth day of absence, Plaintiff did not call anyone in management regarding any of these absences.

On November 9, 2009, Plaintiff again called the attendance line, stating that he was sick and that he had a doctor's appointment on November 23, 2009. Plaintiff's message did not make it clear that he would not return to work during that time. Still, in continuing violation of the Plant Attendance Policy, Plaintiff never contacted a manager between the hours of 8 A.M. and 4 P.M. to report his absence.

Plaintiff was absent on November 10, 11, 12, 13, 16, 17 and 18, 2009 without calling the attendance line and without calling a manager, thus incurring additional unreported absences. Human Resources Generalist Kallen Dahlke, who supported the Des Plaines plant and monitored attendance issues, advised the Des Plaines Plant General Manager Katie Wilhelm of Plaintiff's multiple absences and his failure to call in to management. Based on the information provided to her, Ms. Wilhelm determined that Plaintiff had violated the Plant Attendance Policy when he incurred three consecutive absences on November 4, 5 and 6 without contacting management. As a result, Ms. Wilhelm instructed Mr. Dahlke to terminate Plaintiff's employment. Mr. Dalhke advised Plaintiff by telephone and by a letter on November 19, 2009.

Significantly, at the time of her decision, Ms. Wilhelm was unaware that Plaintiff had made the second call to the attendance line on November 3, 2009 informing them that he

3

expected to be out until November 9, 2009. Nevertheless, Plaintiff still failed to call in to management beginning with his fourth day of absence as required, thus violating the call in procedures of the Plant Attendance Policy.

On November 20, 2009, after his termination, Plaintiff filed a grievance under the Collective Bargaining Agreement claiming that the Defendant had terminated him for a "fictitious reason." Defendant and union representatives discussed Plaintiff's termination over the next several days. On November 30, 2009, as part of the grievance process, Plaintiff agreed to provide medical documentation explaining his absences by December 4, 2009. On December 10, 2009 Plaintiff submitted a note from his doctor stating, "This is to certify that [Pettaway] is under medical care since 11/2/09. He is presently on disability of undetermined duration." During this time period, Ms. Wilhelm learned of Plaintiff's second call on November 3, 2009 and his application for short term disability.

Plaintiff's grievance continued to a fourth step meeting with Regional Human Resources Manager, Mike Hammell. Despite the fact that the evidence still indicated that Plaintiff violated the Plant Attendance Policy by failing to call management after three absences, Mr. Hammell agreed, in consultation with Ms. Wilhelm, to bring Plaintiff back to work retroactive to his termination date. He was placed on an approved leave of absence, and he resubmitted his application for short term disability, which was ultimately approved. Plaintiff's request for FMLA leave was approved for the period November 2, 2009 through January 3, 2010. Additionally, Plaintiff received all allowable sickness and accident payments under IP's short term disability plan between the dates November 2, 2009 through April 19, 2010. Also, all medical bills incurred during this time period were submitted and paid pursuant to applicable insurance policies.

**DISCUSSION**

Summary judgment is appropriate in those cases where the pleadings, affidavits, depositions, admissions, and other discovery documents establish that there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, it is the burden of the moving party to show the Court that no material factual issues exist for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

When the moving party has carried its burden, the non-moving party must come forward with evidence that shows more than some "metaphysical doubt" that genuine and factual issues exist. *Matsushita*, 475 U.S. at 586 (1986). Further, the party opposing a summary judgment motion may not rest merely upon the allegations in the party's pleadings. *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994).

There is no dispute that Plaintiff possessed knowledge of IP's Plant Attendance Policy. There is also no dispute that Plaintiff violated Plant Attendance Policy by failing to provide IP management with timely notification of his absence and, as a consequence, his employment was terminated. Finally, there appears to be no dispute that Plaintiff was ultimately reinstated retroactive to his termination date. His request for FMLA leave was approved, and he received the benefit of sickness and accident insurance payments to which he was entitled.

I note at the outset that it is not clear that Plaintiff has made a prima facie case of FMLA interference or retaliation. In any event, however, he appears to be asking for damages that simply are not available to him under the FMLA. In his Second Amended Complaint, Plaintiff states "…I am asking the court to Grant me 40 million dollars in Punitive Damages. Pursuant to Family Medical Leave act (FMLA) 29 U.S.C. § 2601, et seq." But the FMLA allows plaintiffs

to recover only certain types of monetary losses actually incurred. Employers in violation of the statute are liable for damages equal to the amount of:

> any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>
> in any case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee.

29 U.S.C. § 2617(a)(1)(A)(i).

Recovery under the FMLA is "unambiguously limited to actual monetary losses." *Walker v. United Parcel Service, Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001). "The employer is liable only for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained 'as a direct result of the violation,' and for 'appropriate' equitable relief, including employment, reinstatement, and promotion." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Harrell v. United States Postal Service*, 445 F.3d 913, 928 (7th Cir. 2006).

Even assuming that Defendant violated the FMLA in connection with Plaintiff, Plaintiff's Complaint fails to allege or identify any actual monetary loss suffered. Plaintiff acknowledges that he was permitted to return to work without losing any seniority, and subsequently permitted to take a leave of absence under the FMLA. Plaintiff does not dispute that his requests for leave have been granted, that the discipline has been rescinded, that he was reinstated after his initial termination, and that he has received all allowable sickness payments and reimbursements for medical costs. I cannot see how Plaintiff has not been made whole, and, consequently, Plaintiff's claim simply is not cognizable under the FMLA.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: March 19, 2013